UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

   vs.                REPORT AND RECOMMENDATION

Darryl Patrick Bentz

        Defendant.        Crim. 05-11 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant:

    1.      The Defendant's Motion to Quash Arrest and
            Suppress Evidence Illegally Seized.

    2.      The Defendant's Motion to Suppress Confessions or
            Statements in the Nature of Confessions.

A Hearing on the Motions was conducted on April 11, 2005, at which time, the Defendant appeared personally, and by Robert M. Christensen, Esq., and the Government appeared by Francis J. Magill, Assistant United States Attorney. For reasons which follow, we recommend that the Defendant's Motion to Quash Arrest

and to Suppress Evidence be denied, and that the Defendant's Motion to Suppress

Confessions and Statements in the Nature of Confessions also be denied.[1]

## II. Factual Background

The Defendant is charged with nine Counts of Health Care Fraud, in violation

of Title 18 U.S.C. §1347.   The events which give rise to those charges are said to

have occurred on specific dates between December 8, 2002, and May 17, 2004, in this

State and District.   As pertinent to the charges, and to the Motions now before us, the

operative facts may be briefly summarized.[2]

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motion to Suppress to Suppress Confessions or Statements in the Nature of Confessions.  Leave was granted, and the last brief on the issues was received on April 25, 2005, at which time, the Motions were taken under advisement.  See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 767-77 (8th Cir. 1995).

[2]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

On January 18, 2005, pursuant to a Grand Jury Indictment, a Bench Warrant was issued by United States Magistrate Judge Jonathan G. Lebedoff, which authorized the Defendant's arrest on the pending charges.  He was subsequently arrested at his home in Plymouth, Minnesota, on January 20, 2005, at approximately 6:05 o'clock a.m.   David S. Kiesow ("Kiesow"), who is a Special Agent for the Office of the Inspector General of the United States Department of Health and Human Services, assisted in the Defendant's arrest, and testified at the Suppression Hearing, at the instance of the Government.

According to the testimony of Kiesow, approximately six (6) or seven (7) Agents participated in the Defendant's arrest.  In order to effectuate the arrest, the Agents forcibly entered the Defendant's home using a battering ram.  The forcible entry was made after the Agents had knocked on the Defendant's door loudly, and placed a telephone call to his residence, without receiving any response.  Following their entry, the Agents conducted a protective sweep of the residence, during which the Defendant exited his bedroom.  Todd Thompson ("Thompson"), who is a Special Agent for the Federal Bureau of Investigation ("FBI"), with his standard issue firearm drawn, directed the Defendant to put his hands into the air, and the Defendant complied, after some hesitation.  The Defendant, who was wearing his pajamas, was

- 3 -

handcuffed, and provided a <u>Miranda</u> warning by Agent Gary Nelson, who used a standard issued card, and the Defendant was then placed on his couch. The Defendant's wife was escorted by an Agent to retrieve some clothes for him. During that time, the Defendant made an unsolicited reference to "Anoka Drug" and stated that "you guys don't know the whole story." The Defendant also informed the officers that he had been in automobile accident in 1986, and had sustained ongoing back injuries. Kiesow testified that the Defendant did not inform the officers about any other injuries, although he was aware that the Defendant had previously suffered from constipation, and addiction to prescription drugs.

After the Defendant was allowed to get dressed, he was removed from his house, and transported to the FBI office in Minneapolis, Minnesota, by Kiesow and Thompson. Upon their arrival, Kiesow and Thompson removed the Defendant's handcuffs, and provided him with water so that he could take certain medications. Thompson and Kiesow then escorted the Defendant to an interrogation room, and provided him with an "advice of rights" form, that set forth all of the Defendant's <u>Miranda</u> rights, and that was also read to him by the Agents. The Agents then asked the Defendant if he would be willing to give a statement, at which, time the Defendant stated that wanted an attorney. The Agents stopped the interview. Kiesow testified

that, approximately thirty (30) seconds later, and without any comments being made by the Agents,  the Defendant made the spontaneous statement that "you guys pretty much know what I was doing."  Kiesow then asked the Defendant if he would be willing to talk about specifics and, if he so desired, he would have to waive his previously asserted rights by signing the "advise of rights" form.  The Defendant informed the Agents that he understood, and that he would waive his rights.   The Agents then read the "advise of rights" form to the Defendant for a second time, and he then signed the form, and provided a statement to the Agents.  The interrogation lasted approximately thirty (30) minutes, and concluded when the Agents did not have any more questions to ask.  Kiesow testified that the Defendant's responses were lucid and responsive, and that he never expressed an unwillingness to answer the Agents questions, or any renewed desire to have counsel present for the questioning.

Following the interview, Thompson prepared a report, which reiterated the contents of the Defendant's statements, and included language acknowledging that the Defendant had been provided with an "advice of rights" form, that he had waived his rights prior to giving the statement, and that the Agents made no threats or promises, or engaged in any other coercive conduct, in exchange for his statement.   The Defendant was informed that he could cross out, or add, any language contained in the

report, in the event that it inaccurately reflected his statements, or the events which precipitated the giving of those statements.  The Defendant made some handwritten changes, which were initialed in the left hand margin of the report, and he also initialed each page of the report, and affixed his signature to the last page of the report, thereby verifying its accuracy.  Among the provisions of the report, that had been acknowledged by the Defendant, was the statement that he initially invoked his right to counsel, but subsequently voluntarily waived that right, after being provided with an "advice of rights" form, and a statement that no threats or promises were made by the Agents in the conduct of the interview.  Kiesow testified that, following the statement, the Defendant thanked the Agents for their politeness.

Following the Defendant's statement, at approximately 7:50 o'clock a.m., the Defendant was provided with an opportunity to make a telephone call to his wife. Kiesow testified that he was uncertain of the exact time when the Defendant requested to make that telephone call, but that the request was granted shortly after it was made.

Kiesow also testified that, as a part of the investigation which resulted in the pending charges, Thompson had contacted the Defendant on multiple occasions during the Summer of 2004, about submitting to an interview.  On several occasions, the Defendant agreed to participate in an interview, but later changed his mind, and

no interviews were conducted during that time.  Kiesow also understood that the Defendant had retained an attorney -- Lynn Walters ("Walters") -- in the later part of 2004.

The Defendant also testified at the Hearing.  His testimony reflects that he first became aware that he was under investigation in the Summer of 2004, when he observed two persons, who he now identifies as Thompson and Kiesow, in the vicinity of his town home, looking through his garbage.  Subsequently, he received a telephone call from Thompson, in which Thompson referenced prescriptions filled at "Anoka Drug," and stated that Thompson and Kiesow wanted to talk to him.  The Defendant testified that he had informed Thompson that he did not want to talk to him, and that he had retained Walters to represent him.  He further testified that Walters had discussed his situation with an Assistant United States Attorney, but that, after his attempts to negotiate an acceptable plea agreement failed, Walters informed the Defendant that he was not comfortable representing the Defendant in his defense on Federal charges.  The Defendant testified that, because he had received the proposed plea agreement in the mail, both he, and Walters, were of the belief that, following his Indictment, he would receive a Summons in the mail.

The Defendant also testified that, on the morning of his arrest, he and his wife were awakened by the sound of shuffling outside of their town home.   He subsequently heard the door being slammed open, and he became concerned that an intruder had entered his home.  He remained in his bedroom, but called out: "What do you want?"  One of the Agents directed the Defendant to come out of his bedroom with his hands in the air.  The Defendant testified that he did as he was instructed and, upon doing so, he observed several Agents with their firearms drawn, pointed in his direction.  He testified that the some of the Agents were dressed in camouflage, and that one of the Agents had a "machine" type gun pointed at his head, while another was pointing a gun at his wife's head.   The Defendant testified that he was then surrounded by three Agents, and was handcuffed, while his wife was escorted, at gunpoint, to retrieve the Defendant's clothes.

The Defendant was subsequently removed from his house, and placed in the Agents' vehicle.  He testified that it took the Agents approximately ten (10) minutes to fasten his seatbelt, during which time he informed Thompson that he was experiencing considerable pain in his chest.   Thompson attempted to loosen the Defendant's handcuffs, but refused the Defendant's several requests to bring him to a hospital, and instead, told him that he could get some Aspirin, once they arrived at

- 8 -

the FBI office.    The Defendant also testified that he was extremely concerned about his wife's condition, because she is physically disabled, and the Agents' forcible entry had broken the door to their home in such a way that it could not be closed.    As a result, the Defendant stated that he asked to place a telephone call to her, during his transport to the FBI office, but that he was not allowed to place that call until after he had provided the statement to Thompson and Kiesow.

As to the taking of his statement, the Defendant testified that he was taken into an interview room, and provided with an "advice of rights" form.  The Defendant testified that he informed the Agents that he wanted an attorney, at which time, Kiesow directed his attention to a stack of papers and informed the Defendant that the papers were forged prescriptions, and told him "You'd be better off if you cooperated."    The Defendant testified that he then chose to talk to the Agents, and believed that his cooperation would result in beneficial treatment -- namely, that he would be able to place a telephone call to his wife.

### III.  Discussion

A.    The Defendant's Motion to Quash Arrest the Arrest Warrant and to Suppress Evidence Illegally Seized.

The Record reflects that the Warrant for the Defendant's Arrest was issued following his Indictment by a Grand Jury on the pending charges.

Nevertheless, the Defendant asserts that his Arrest should be quashed for want of probable cause.  Under the Federal Rules, probable cause is determined by the Grand Jury, and is satisfied by the issuance of an Indictment.  See, <u>Rule 7.1, Federal Rules of Criminal Procedure</u>; see also, <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956).  Therefore,  we recommend that the Defendant's Motion to Quash the Arrest Warrant, and to suppress evidence constituting the "fruits" of that arrest be denied.

      B.    <u>The Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions</u>.

      1.    <u>Standard of Review</u>.  The Sixth Amendment provides that, "[i]n all criminal trials, the accused shall enjoy the right * * * to have the assistance of counsel for his defense."  This right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," and, once invoked,[3] may not be waived at subsequent police initiated interrogation.  <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972); see also, <u>Patterson v. Illinois</u>, 487 U.S. 285, 291 (1988); <u>Michigan v. Jackson</u>, 475 U.S. 625, 636 (1986).  Thus, "if police initiate interrogation

---

[3]"If the person has not invoked [the right to counsel] * * * a waiver of the right may be made during police interrogation by the person acting alone."  <u>Chewning v. Rogerson</u>, 29 F.3d 418, 422 (8th Cir. 1994).

after a defendant's assertion [of the right to counsel], * * * any waiver of the defendant's right to counsel for that police initiated interrogation is invalid." Michigan v. Jackson, supra at 636; see also McNeil v. Wisconsin, 501 U.S. 171, 173 (1991). Such a bright-line rule is "designed to prevent police from badgering a defendant into waiving his previously asserted [right to counsel]." See, McNeil v. Wisconsin, supra at 177, quoting Michigan v. Harvey, 494 U.S. 344, 350 (1990).

Nevertheless, an accused's waiver of his right to counsel will be valid, if the accused "initiates" the questioning, and if his subsequent waiver is "knowing, intelligent, and voluntary." See, Owens v. Bowersox, 290 F.3d 960, 964 (8th Cir. 2002), citing Oregon v. Bradshaw, 462 U.S. 1039, 1045-1046 (1983)(plurality opinion, Rehnquist, J.); Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000). "[I]t is the State that has the burden of establishing a valid waiver," and "[d]oubts must be resolved in favor of protecting the constitutional claim." Michigan v. Jackson, supra at 633.

"A defendant 'initiates' an interrogation if he or she 'evince[s] a willingness and a desire for a generalized discussion about the investigation.'" Id., at 963, quoting Holman v. Kemna, supra at 417, quoting in turn, Oregon v. Bradshaw, supra at 1045-1046. However, "inquiries or statements, by either an accused or a police officer,

relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in Edwards [v. Arizona, 451 U.S. 477 (1981)]."  Oregon v. Bradshaw, supra at 1045.[4]

In the event that an accused "initiates" a discussion with law enforcement officers, statements made during that discussion will be admissible so long as the accused has waived his previously asserted right to counsel in a knowing, intelligent, and voluntary manner.  Owens v. Bowersox, supra at 964, citing Holman v. Kemna, supra at 417; see also Patterson v. Illinois, supra at 291-292.  While "the scope of the right to counsel varies depending on the usefulness of counsel to the accused at a particular proceeding and the dangers to the accused of proceeding without counsel," United States v. Fellers, 397 F.3d 1090, 1096 (8th Cir. 2005), citing Patterson v. Illinois, supra at 298, for the purposes of post-Indictment questioning, "so long as the accused is made aware of the 'dangers and disadvantages of self representation' during postindictment questioning by use of the Miranda warnings, his waiver of his

---

[4]While Bradshaw and Edwards were both decided under the Fifth Amendment's protection against self-incrimination, their analyses, are equally applicable where the Sixth Amendment's right to counsel is at issue.  See, Michigan v. Jackson, 475 U.S. 625, 636 (1986)(applying rule in Edwards to cases brought under the Sixth Amendment); Owens v. Bowersox, 290 F.3d 960, 963 (8th Cir. 2002)(applying Bradshaw analysis to the petitioner's Sixth Amendment claim); Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000)(same).

Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.'" Patterson v. Illinois, supra at 300.

A statement will be voluntary under the "totality of the circumstances" test, so long as the will of the suspect had not been overborne at the time that it was made. United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994). Factors considered in making that determination include "the background, experience, and conduct of the accused." United States v. Barahona, 99- F.2d 412, 418 (8th Cir. 1993); see also, Ferguson v. Bruton, 217 F.3d 983, 985 (8th Cir. 2000); United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999). Such personal factors are considered in relation to the conduct of the interrogating officers. United States v. Jones, supra at 1313; Smith v. Bowersox, 311 F.3d 915, 922 (8th Cir. 2002). A waiver and subsequent statement will be voluntary if the analysis reveals that they were "the result of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Barahona, supra at 418. Coercive police conduct, therefore, is a "necessary predicate" to render a confession involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986); see Holman v. Kemna, supra at 421. The purpose in considering the "background, experience, and conduct of the accused," is to determine the "capacity of the suspect

to resist pressure to confess." United States v. Jones, supra at 1313, quoting United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992).

For understandable reasons, the Courts have recognized that pressures may be brought to bear upon an accused which have overborne his will, and have caused him to confess. See, Michigan v. Mosley, 423 U.S. 96, 105-06 (1975). However, not all pressure tactics used in interrogation prevent an accused person from voluntarily waiving his rights. United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001) ("Numerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne."). Only those interrogative techniques that cause the will of the accused to be overborne will be found sufficiently oppressive to render a confession involuntary. United States v. Martin, 369 F.3d 1046, 1055-1056 (8th Cir. 2004), citing United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002).

2.    Legal Analysis.  The Defendant seeks to suppress statements that he made to the Agents at his home, on the morning of his arrest, as well as the statements made during his interview with Kiesow and Thompson. The Defendant maintains that all of the statements should be suppressed since he had already been

- 14 -

indicted, and the statements were obtained in the absence of counsel.  Additionally, with respect to the statement at the FBI office, the Defendant contends that his Sixth Amendment Rights were violated when the Agents continued to question him after he had unequivocally invoked his right to counsel.  The Defendant also argues that the pressures brought to bear on him, by the Agents during that interrogation, were sufficient to render his waiver of his right to counsel involuntary in violation of both the Fifth and Sixth Amendments.

Here, the Defendant was indicted on the pending charges prior to his arrest, and accordingly, the Agents who effected that arrest were prohibited from "deliberately eliciting" information from him related to those charges.  Fellers v. United States, 540 U.S. 519, 524 (2004).   The deliberate elicitation standard is distinguishable from the "custodial interrogation" standard, which is applied under the Fifth Amendment, in that neither custody, nor interrogation, is required for finding a Sixth Amendment violation to exist.  Id., citing Michigan v. Jackson, supra at 632, n. 5.  It does, however, include instances where law enforcement officers "'deliberately and designedly' set out to elicit an incriminating statement from an accused by use of a psychological ploy."  United States v. Criswell, 696 F.2d 636, 639 (8th Cir. 1982), citing Brewer v. Williams, supra at 399.

2afa2f8a1172b95f

As to the statements made by the Defendant, while he was in his home, the Record reflects that they were spontaneous and voluntary, and the Defendant has not presented anything to suggest that the Agents, who effected his arrest, made any effort to elicit any sort of information from him regarding criminal activity.  Therefore, the Defendant's unsolicited statements, in his home  at the time of his arrest,  did not result from any violation of the Sixth Amendment's right to counsel. See, Id.(finding spontaneous and voluntary statements admissible); see also Kuhlmann v. Wilson, 477 U.S. 436, 460 (1986)(Court of Appeals erred in finding deliberate elicitation standard was satisfied based on Trial Court's findings that the statements were "unsolicited" and "spontaneous.").

The Record contains conflicting testimony regarding the events which resulted in the Defendant's statement at the FBI office, and accordingly, our credibility determination heavily influences the result we reach as to the lawfulness of that questioning.  In assessing the believability of the witnesses, we have closely weighed their demeanor, and the consistency of their testimony with both common sense, and with the Record in its totality.  We are persuaded that Kiesow is the more believable. He deported himself well as a witness, responded directly and forthrightly, to the questions asked, and he appeared to have a proper appreciation for the law which

governs the interrogation of persons accused of criminal activity.  Furthermore, the Defendant has drawn nothing to suggest that Kiesow had any past record of falsification, dishonesty, or perjury.

On the other hand, we are not persuaded that the Defendant is fully believable. Specifically, his testimony at the Hearing, concerning the Agents' conduct prior to, and during the taking of his statement, was contradicted by his own actions on the day of the interview, when he signed and initialed the report prepared by Thompson, which acknowledged that he had agreed to provide a statement after his rights were explained to him twice, and that neither of the Agents made any threats or promises in exchange for that statement.  The veracity of the Defendant's testimony is also called into doubt by the evidence on the Record that, despite being afforded an opportunity to add and delete portions of the report prepared by Thompson, the Defendant made no mention of being denied access to medical care, or of being denied an opportunity to place a telephone call to his wife.   The Defendant's statements are also inconsistent with the testimony of Kiesow, that all of the questioning ceased after the Defendant's invocation of his right to counsel.

Accordingly, we accept the testimony of Kiesow, that approximately thirty (30) seconds after the Defendant invoked his right to counsel, he made the unsolicited

statement, "you guys pretty much know what I was doing." We are also satisfied that this statement "initiated" the questioning which produced the Defendant's statement. See, Oregon v. Bradshaw, supra at 1045-1046 (finding question "Well, what is going to happen to me now?" initiated the subsequent questioning); Pickens v. Gibson, 206 F.3d 988, 994 (10th Cir. 2000)(finding inquiry concerning charges initiated questioning); United States v. Valasquez, 885 F.2d 1076, 1085 (3rd Cir. 1989)(finding question "What is going to happen?" initiated questioning) cert. denied, 494 U.S. 1017 (1990); Judd v. Vose, 813 F.2d 494, 497-98 (1st Cir. 1987)(finding defendant's discussion about his car, which lead to officers inquiry about the location of his car initiated conversation about the investigation); United States v. Kroesser, 731 F.2d 1509, 1520 (11th Cir. 1984)(finding that a defendant who tearfully voiced regrets about involving a co-defendant in criminal activity initiated the subsequent questioning); see also, Lamp v. Farrier, 763 F.2d 994, 998 (8th Cir.), cert. denied, 404 U.S. 1009 (1985). We are further satisfied that, in light of the Defendant's decision to sign the "advice of rights" form, which was read, and explained to him by the Agents, that the subsequent waiver of his right to counsel was knowing and intelligent. Patterson v. Illinois, supra at 300.

In addition, we have been presented with no credible showing that the Defendant's will was improperly overborne by the Agents, or that the statements, that he had made to the Agents, were involuntary.  The Defendant urges that the dramatic fashion, in which the officer's effected his arrest, the conduct of the Agents in refusing to bring him to the hospital during his transport, and the Agents' refusal to let him telephone his wife, rendered his statements involuntary.  As previously noted, we do not credit the testimony of the Defendant concerning the asserted impropriety of the Agents' conduct regarding his access to medical care, or to placing a telephone a call to his wife, considering the contrary testimony of Kiesow, and the evidence on the Record as a whole.   Further, while we do not question that the Defendant was uncomfortable following his arrest, we find that such discomfort was not tantamount to overbearing his will, and that, as a result, the Defendant's waiver of his right to counsel was knowing, intelligent, and voluntary.  Accordingly, we recommend that his Motion to Suppress Confessions or Statements in the Nature of Confessions be denied in its entirety.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendant's Motion to Quash Arrest and to Suppress Evidence Illegally Seized [Docket Nos. 38, 40, 47, and 48] be denied.

2.     That the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions [Docket No. 32] be denied.


Dated: April 26, 2005            s/Raymond L. Erickson
                               Raymond L. Erickson
                               UNITED STATES MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 13, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 13, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.